## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Christopher Nielsen and Sarah
Nielsen,

                        Case No. 13-cv-11085

               Plaintiffs,     Hon. Judith E. Levy

                        Mag. Judge R. Steven Whalen

v.

E*Trade Mortgage Corporation,

               Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' [47] MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S [51] MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFFS' [53] MOTION TO CONSOLIDATE

Plaintiffs Christopher and Sarah Nielsen bring this action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), against defendant E*Trade Mortgage Corporation. Before the Court are plaintiffs' Motions for Summary Judgment (Dkt. 47) and to Consolidate with Case Number 14-11654 (Dkt. 53), and defendant's Motion for Summary Judgment (Dkt. 51). The Court will decide the motions without oral argument. *See* E.D. Mich. L.R. 7.1(f)(2). For the

reasons set forth below, plaintiffs' motions will be denied and defendant's motion will be granted.

## I.      Background

On February 28, 2006, plaintiffs granted a mortgage (the "Mortgage") to E-Loan, Inc., on real property located at 4960 Shepper Rd., Stockbridge, Michigan 49285 (the "Property").  The Mortgage was security for repayment of a loan to plaintiffs for $35,000.00 (the "Loan"). The parties agree that defendant is the successor-in-interest to E-Loan, Inc. with respect to the Loan and Mortgage.  The parties also agree that the Mortgage was serviced by PNC Bank ("PNC").  Plaintiffs were obligated to make monthly payments of $250.74 through April 1, 2021. Plaintiffs maintain they were never late making a payment.

In early 2012, plaintiffs were in financial trouble and unable to keep their home.  In March 2012, defendant approved plaintiffs' application for a short sale.  Specifically, defendant agreed to release the Mortgage upon receipt of $3,500.00 from plaintiffs in proceeds from the short sale.  (*See* Dkt. 52, Ex. F.)  Plaintiffs agreed they would remain liable for the $28,410.36 balance (the "Account Balance") on the Loan. (*Id.*)  The agreement provides that "the deficiency balance will be

reported to credit reporting agencies as charged-off which could negatively impact your credit score." (*Id.*)  The short sale of the Property closed on March 29, 2012.  On April 9, 2012, PNC indicated in its records that the Account Balance would be charged-off.[1]  (*See* Dkt. 51, Ex. E, p. 14.)

In April 2012, plaintiffs received correspondence from defendant indicating their Account Balance had been "charged-off as a bad debt." (Dkt. 51, Ex. J to Def.'s Mot. 3.)  Soon after, Christopher Nielsen ("Mr. Nielsen") began talks with representatives of PNC concerning the Account Balance and the way this debt would appear on his credit report.

According to defendant, PNC Representative Sam Woods ("Woods") made several offers to Nielsen to settle the Account Balance for less than the $28,410.36 outstanding.  It is undisputed that the parties agreed on a settlement amount of $5,657.00.  The parties also agree that Woods sent an undated letter to plaintiffs, memorializing the terms of the settlement offer (the "Settlement Offer").  (Dkt. 51, Ex. L.) The Settlement Offer indicated that once the $5,657.00 was received,

---

[1] Black's Law Dictionary defines "charge off" as "to treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Black's Law Dictionary* (10th ed. 2014).

the Account Balance would be satisfied and "all consumer reporting agencies to which PNC Bank directly provides information will be notified of the 'Settled in Full' status." (*Id.*)

The parties disagree on the meaning of this Settlement Offer and the "Settled in Full" language. According to defendant, "Settled in Full" is not a "status" in the computer system used by credit reporting agencies and furnishers of credit information to respond to consumer credit disputes. (*See* Dkt. 51, Def.'s Mot. 6-7.) Instead, "account paid in full" is a comment that may be attached to any one of several statuses. Accordingly, defendant argues that the terms "Settled in Full" and "charged-off" are not mutually exclusive, and that it never intended to report plaintiffs' debt as simply "Settled in Full." Plaintiffs argue that the Settlement Offer guaranteed defendant would report plaintiffs' Account Balance as "Settled in Full" without any indication the Account Balance had been charged-off. (*See* Dkt. 47, Pls.' Mot. 10.)

Plaintiffs support their position with an e-mail Mr. Nielsen testified he received from Woods. (Dkt. 47, Ex. 2, p. 30 [hereinafter the "PNC e-mail"].) The email contains the following: "Chris, It will not show 'paid in full' We will remove the 'charge off' note. It will be

4

replaced with 'settled in full'." Both parties agree that the PNC e-mail is undated. Defendant claims the PNC e-mail was not part of its records. (Dkt. 49, p.7.) Defendant further contends the PNC e-mail appears to be "altered": the "to" and "date" lines are missing, along with the body of the second e-mail contained in the exhibit. (Dkt. 58, p.4; Dkt. 47, Ex. 2, p.30.) A text box has been inserted over the line "It will not show 'paid in full' We will remove the 'charge off' note." (Dkt. 47, Ex. 2, p. 30.) Mr. Nielsen testified at his deposition that he did not know why the "to" and "date" lines were missing or why the body of the second e-mail was missing, and that he "did not receive the email with the text box around that line." (Dkt. 58-3, Ex. B to Def.'s Reply 62-4 [hereinafter "Nielsen Dep."].) Woods testified the email did not appear to be an email he had sent to Mr. Nielsen. (Dkt. 49-15, Ex. N to Def.'s Mot. 15-16.)

Plaintiffs accepted defendant's Settlement Offer and paid the required $5,657.00 on June 26, 2012. (Dkt. 60-1 at 5.)

On August 8, 2012, Mr. Nielsen submitted the first of three consumer disputes regarding the trade line on his credit report dealing with the Account Balance (the "First Dispute"). (Dkt. 51-16, Ex. O to

Def.'s Mot.)  The First Dispute was submitted to Equifax Information Services, LLC ("Equifax"), which then sent the dispute to defendant.  In the First Dispute, Mr. Nielsen asserted that the Account Balance should not be reported as a charge off.  (*Id.*)

Defendant's representative Derek Geraci responded to the dispute.  Geraci testified at deposition that he reviewed relevant data, notes, and document images stored in four different computer systems. (Dkt. 51-17, Ex. P to Def.'s Mot., Geraci Dep. 23–25.)  On August 13, 2012, Geraci completed the Automated Credit Dispute Verification ("ACDV") response, noting that the Account Balance had been "paid in full for less than the full balance," and that the "[a]ccount paid in full was a charge off."  (Dkt. 51, Ex. O to Def.'s Mot.)

On the same day, Woods completed an Internal Credit Bureau Request Form (the "Request Form").  (Dkt. 51, Ex. T to Def.'s Mot.)  Two boxes are checked on the Request Form: the first is next to the phrase "Update Charge off status as," followed by several options.  The "Paid Settlement" option has a line through it and is circled.  The second checked box is next to the phrase "Other."  Next to the word "Other" are

6

the handwritten words "'Settled in Full' from charge off." The Request
Form is signed by Woods.

The parties dispute the meaning and importance of the Request
Form. Plaintiffs contend the Request Form is ambiguous, requiring
Geraci to discuss its meaning with either Woods or Woods' supervisor,
Darlene Davis. (Dkt. 47, Pls.' Mot. 3.) In plaintiffs' view, the Request
Form required deletion of the "charge off" status and replacement with
"settled in full." Geraci, however, incorrectly interpreted the Request
Form as requiring Mr. Nielsen's trade line to indicate both "settled in
full" and "charge off." Defendant maintains the Request Form is clear:
the handwritten comment meant that Nielsen's trade line should be
updated to add "settled in full." (Dkt. 51, Def.'s Mot. 9.)

On August 14, 2012, Equifax sent Mr. Nielsen the results of the
First Dispute, showing that defendant had updated the status of his
Loan and Account Balance to state "Status – Charge Off . . . Account
Paid for Less than Full Balance; Paid Charge Off." (Dkt. 52-2, Ex. R. to
Def.'s Mot.) Mr. Nielsen testified that this information was correct, but
that it did not reflect his agreement with defendant. (Nielsen Dep. 80.)

The parties agree that Mr. Nielsen filed two more consumer disputes with Equifax, and that both were then sent on to defendant. In his second dispute, submitted October 8, 2012, Mr. Nielsen claimed the "bad debt placed for collection and skip" language previously removed by defendant was still appearing on his credit report (the "Second Dispute").[2]  On October 17, 2012, Geraci completed an ACDV response verifying that the Account Balance was paid in full for less than the full balance and was a charge off.  (Dkt. 51, Ex. Y to Def.'s Mot.)  As of October 18, 2012, Equifax was reporting the Loan and Account Balance were "paid for less than full balance – paid charge off." (Dkt. 52-4, Ex. AA to Def.'s Mot. 5.)

On December 20, 2012, Mr. Nielsen filed his third dispute (the "Third Dispute").  Mr. Nielsen again claimed that his credit report incorrectly showed the Loan and Account Balance as "Bad debt placed for collection & skip."[3]  (Dkt. 47, Ex. 11 to Pl.'s Mot.)  On January 2,

---

[2] None of Mr. Nielsen's claims relate to the "bad debt placed for collection & skip" language.

[3] Defendant states that Mr. Nielsen incorrectly believed that his credit report still contained the language "Bad Debt placed for collection & skip" after visiting the website www.creditscore.com ("CreditScore"). According to defendant, CreditScore was incorrectly reporting Mr. Nielsen's credit history.  (Dkt. 51, Def.'s Mot. 10.) Defendant further notes that Mr. Nielsen's testimony that he had never obtained or seen a copy of his credit generated by Equifax or Experian.  (Nielsen Dep. at 24.)

2013, defendant's representative Jiaojie Wang completed the ACDV response to the Third Dispute. Wang's notes reveal that she reviewed the relevant materials in four different computer systems before completing the ACDV response. (Dkt. 51-32, Ex. EE to Def.'s Mot.) Wang's ACDV response indicated that the Loan was correctly represented as "Account paid in full was a charge off." (Dkt. 51-31, Ex. DD to Def.'s Mot.) As of January 2, 2013, Equifax was reporting the Loan and Account Balance were "paid for less than full balance – charged off account." (Dkt. 52-7, Ex. GG to Def.'s Mot. 5.) The parties agree that this is the current language appearing on Mr. Nielsen's credit report.

On March 31, 2013, Mr. Nielsen filed a complaint against defendant and Equifax, alleging defendant negligently and willfully violated section 1681s-2(b) of the FCRA by (1) failing to review all relevant available information after receiving Mr. Nielsen's disputes, and (2) incorrectly reporting that the Loan and Account Balance were charged-off. (Dkt. 1.)

On July 30, 2013, Plaintiff Sarah Nielsen ("Mrs. Nielsen") filed her complaint against defendant and Equifax. Mrs. Nielsen's case was

9

consolidated with this matter on August 29, 2013.  (Dkt. 16.)  By the parties' stipulation, the Court dismissed with prejudice all claims against Equifax on November 27, 2013.  (Dkt. 20.)

On March 27, 2014, plaintiffs filed a joint complaint in Washtenaw County Circuit Court against defendant and PNC, bringing claims for breach of contract, promissory estoppel, and specific performance in connection with the events described above.  Defendant removed the case to this Court on April 25, 2014.  (*See* Dkt. 53.)  On July 30, 2014, plaintiffs filed a motion to consolidate this matter with the removed action.

## II.   Standard

### A.   Rule 56

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248.  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the

10

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

**B.    Rule 42**

The Court may, in the interest of judicial efficiency, consolidate cases if such cases involve a common question of law or fact. Fed. R. Civ. P. 42(a). The decision to consolidate cases involving the same factual or legal questions for trial is a matter within the discretion of the trial court. *Cantrell v. GAF Corp.*, 999 F.2d 1007 (6th Cir. 1993). In deciding whether to consolidate cases, the court should consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.*

**III.   Analysis**

**A.    Sarah Nielsen's claims**

As an initial matter, both parties agree that Equifax's failure to send Mrs. Nielsen's dispute to defendant precludes Mrs. Nielsen's claims under the FCRA.  (*See* Dkt. 47, Pls.' Mot. 2 n.1; Dkt. 51, Ex. MM.)   Accordingly, Mrs. Nielsen's claims against defendant will be dismissed with prejudice.

### B.   Christopher Nielsen's claims

1.   <u>FCRA</u>

Section 1681s-2(b) of the FCRA outlines the duties of credit information furnishers upon receiving notice of a dispute:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

> **(A)** conduct an investigation with respect to the disputed information;

> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> **(C)** report the results of the investigation to the consumer reporting agency;

> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person

furnished the information and that compile and maintain files on consumers on a nationwide basis; and

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

> **(i)** modify that item of information;
>
> **(ii)** delete that item of information; or
>
> **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). These duties are enforceable by private action. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 618 (6th Cir. 2012). Furnishers are liable for willful or negligent violations of their FCRA duties. *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). A consumer may show that a furnisher willfully breached its FCRA duties by demonstrating that a knowing or reckless violation was committed. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56–57 (2007).

Plaintiffs cite two ways in which defendant allegedly violated its FCRA duties: by failing to conduct a reasonable investigation of Mr. Nielsen's disputed information – specifically, that the Loan and Account Balance was charged off – and by failing to report accurate information following each investigation.

2.    Reasonableness of defendant's investigations

Any investigation performed by a furnisher under § 1681s-2(b) must be "reasonable." *Boggio*, 696 F.3d at 616.  The investigation must be a "fairly searching inquiry" that is "something more than a merely cursory review." *Id.*  The reasonableness of an investigation is related to the second duty under § 1681s-2(b), as the amount of information a furnisher reviews will affect the reasonableness of the investigation. *Id.* at 617.

Plaintiffs maintain the Court is required to consider the FCRA regulations at 12 C.F.R. § 41.1(a) and (e), defining "accuracy" and "integrity," in determining the reasonableness of defendant's investigations.  (Dkt. 47, Pls.' Mot. 8-9.)  As of May 16, 2014, those sections are no longer in force and may not be considered here.  79 Fed. Reg. 28393, 28400 (May 16, 2014).

Plaintiffs argue that defendant negligently and willfully violated the FCRA by failing to conduct a reasonable investigation into whether Mr. Nielsen's Loan and Account Balance should be reported as charged off. (Dkt. 47, Pls.' Mot. 18.) Specifically, plaintiffs cite Geraci's alleged "indifference" in determining the meaning of the phrase "settled in full with charge off" on the Request Form, and Wang's alleged "habitual" reporting of charge offs based on form letters such as the Settlement Offer.

Plaintiffs have failed to provide any evidence that such "indifference" or "habitual" reporting occurred. Geraci testified at deposition that he reviewed data, notes, and document images related to Plaintiffs' Loan and Account Balance from four different data and document storage systems. (Geraci Dep. 22.) Geraci further testified that he needed to, and did, look at more than just the Settlement Offer to determine how defendant had agreed to report Mr. Nielsen's trade line. (Id. at 23.) Finally, Geraci testified that he reviewed the Request Form, and interpreted it to mean that the Loan and Account Balance should be reported as "settled in full charge off." (Id. at 41.)

15

Plaintiffs insist that Geraci "randomly" interpreted the Request Form to mean the Loan and Account Balance should be reported both as "settled in full" and as "charged off." (Dkt. 47, Pls.' Mot. 12.)

In making this argument, plaintiffs misrepresent Geraci's deposition testimony. Geraci did not, as plaintiffs assert, testify that the Request Form could have equally meant that no charge off was to be reported. (Id. at 11.) Nor was Geraci "confused" as to the meaning of the Request Form. (Id.) At one point in the relevant exchange, plaintiffs' counsel asked, "It could be interpreted either way, correct?", to which Geraci replied, "I would say so." (Id. at 42.) But just before this, Geraci had unequivocally stated, three times, that he interpreted the Request Form to mean both "settled in full" and "charge off" should appear in Mr. Nielsen's trade line. (Id. at 41-2.) It is not clear what plaintiffs' counsel meant by "either way," or what Geraci meant by "I would say so," particularly as Geraci proceeded to state a fourth time that Mr. Nielsen's trade line should be reported as "settled in full and charge off." (Id. at 42.) In short, plaintiffs' argument about the Request Form is meritless.

16

Plaintiffs also mischaracterize Wang's deposition testimony.  At her deposition, Wang looked at the Settlement Offer and testified that "I have seen this type of letter.  Whether or not it took the settlement – when it says settled in full, it is 64AU" – the code for settled in full with charge off.  (Wang Dep. 16.)  Plaintiffs take this statement to mean Wang reported accounts as charged off, even when they weren't.  (*See* Dkt. 47, Pls.' Mot. 12-13.)  The problem with this argument is that plaintiffs' account <u>was</u> charged off.  Moreover, the argument assumes the Settlement Offer indicated plaintiffs' charge off would not be reported.  But the Settlement Offer does not say that.  Rather, it says reporting agencies "will be notified of the "Settled in Full" status" – nothing more.

Wang's testimony does not support plaintiffs' claim of a failure to conduct a reasonable investigation.  In fact, her investigation notes show that she did conduct a reasonable investigation – reviewing documents and data from four different storage systems.  (Dkt. 51-32, Ex. EE to Def.'s Mot.; Wang Dep. 12.)

Plaintiffs have provided no evidence to suggest defendant made a "cursory review" during any reinvestigation.  And defendant has

17

provided evidence that it did, in fact, conduct reasonable investigations of the First, Second, and Third Disputes. Plaintiffs have thus failed to show a genuine factual dispute as to the reasonableness of defendant's investigations.

     3.   <u>Accuracy of information reported by defendant</u>

Plaintiffs cite a second basis for finding defendants negligently and willfully violated the FCRA: defendant failed to properly report the results of the investigation. Geraci and Wang reviewed the Settlement Offer, and Geraci also reviewed the Request Form. [4] In plaintiffs' view, defendant should have removed the charge off based on the Settlement Offer and the Request Form.

"A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Bailey v. Equifax Info Servs., LLC*, No. 13-10377, 2013 WL 3305710, at *4 (E.D. Mich. July 1, 2013) (internal citations omitted). The investigation results reported by defendants were the same each time: that the Loan and Account Balance were

---

[4] Plaintiffs also rely on an undated email, purportedly from Woods to Mr. Nielsen, to support their allegation that defendant agreed not to report the Loan and Account Balance as a charge off. But plaintiffs do not dispute defendant's contention that the email was not part of plaintiffs' account file, and thus was not among the materials reviewed as part of Geraci's and Wang's investigations.

settled in full and were charged off. More importantly, Mr. Nielsen admitted at his deposition that the information – including the charge off designation – is correct. (Nielsen Dep. 79-80.) Plaintiffs have submitted no evidence that the Loan and Account Balance were not, in fact, charged off. There is no genuine dispute, then, as to the accuracy of the information, including the charge off, reported by defendant. Plaintiffs thus cannot prevail on the ground that defendant failed to report accurate information.

In sum, defendant is entitled to summary judgment on plaintiffs' claims for willful and negligent violation of the FCRA.

4.    Actual damages

Mr. Nielsen's negligent violation claims must be dismissed for a second, independent reason: he has failed to present evidence of actual damages.

Under 15 U.S.C. § 1681*o*(a)(1), only actual damages are recoverable for negligent violations of the FCRA. *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705 (6th Cir. 2009) (holding section 1681*o* "allows a [negligence] plaintiff to recover only actual damages, not statutory damages"). And "[i]n order to recover actual damages, a

19

plaintiff must show that the violation of the [FCRA] caused the loss of credit or some other harm." *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 360–361 (6th Cir. 2005). Actual damages may include damages for emotional distress, but only where the plaintiff "reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." *Id.* at 361.

Plaintiffs have submitted no evidence that Mr. Nielsen has suffered any "loss of credit or some other harm" as a result of defendant's alleged negligent violations of the FCRA. Mr. Nielsen testified that he (1) has not applied for credit since the short sale (Nielsen Dep. 95); (2) was told by a lender he would qualify for a mortgage (Id. at 96); (3) had credit limits reduced on two credit cards, but could not say whether that was related to the information reported by defendant (Id. at 98-104); (4) has suffered no impact from the lowered limits on those two credit cards (Id. at 100-101); and (5) suffered no other financial damage from the information reported by defendant (Id. at 105).

As to the "mental anguish, suffering, humiliation, and embarrassment" alleged in Mr. Nielsen's complaint (Dkt. 1, ¶ 20), Mr.

Nielsen only testified to one specific such instance – having to explain the entry in his credit report during a job interview – but could not recall exactly when the interview took place, and, in fact, testified that it "presumably" took place before the First Dispute. (Nielsen Dep. 105-06.) Otherwise, Mr. Nielsen's testimony of mental anguish consists of conclusory statements that are insufficient to show actual damages. (*See* id. at 107-08.)

### C. Motion to Consolidate

As this Order will dispose of all remaining claims in this case, consolidation is unwarranted. Plaintiffs' Motion to Consolidate will therefore be denied as moot.

## IV. Conclusion

Accordingly, plaintiffs' Motion for Summary Judgment (Dkt. 47) is DENIED;

Defendant's Motion for Summary Judgment (Dkt. 51) is GRANTED;

Plaintiff's Complaint is DISMISSED with prejudice; and

Plaintiffs' Motion to Consolidate with Case Number 14-11654 (Dkt. 53) is DENIED as moot.

IT IS SO ORDERED.

Dated: March 30, 2015                       s/Judith E. Levy
Ann Arbor, Michigan                         JUDITH E. LEVY
                                            United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2015.

                                            s/Felicia M. Moses
                                            FELICIA M. MOSES
                                            Case Manager